## New York Supreme Court—Special Term—Saratoga Co.

### *July*, 1887.

## PEOPLE *ex rel.*, OTTOLENGUI v. BARBOUR.

### CERTIORARI—BETTING ON RACES—PENAL CODE, SEC. 351.

Upon a return of a writ of certiorari to review proceedings before a committing magistrate, the evidence taken before the magistrate should in some way be brought before the court either by the return of the magistrate or by some direction of the court.

The supreme court upon the return to a writ of certiorari to review a commitment, should inquire into the whole case, hear and examine all the evidence and dispose of it upon the merits as it shall be found upon the proofs offered.

An agreement by which complainant sent through defendant to a third party at the Sheepshead bay race track, a sum of money to be invested by said third party on a race to be that day run, considered by the court and held to constitute a violation of Sec. 351, of the Penal Code, prohibiting keeping or occupying with books, etc., for the purpose of recording or registering bets or wagers.

A person who engages in a transaction which is illegal, cannot protect himself by declaring it to be something else innocent and legal.

Certiorari to inquire into the cause of the detention of one Leo Ottolengui, by John L. Barbour, a police justice of Saratoga Springs.

The facts fully appear in the opinion.

*W. J. Miner*, for relator.

*T. F. Hamilton*, district attorney; *J. W. Houghton*, of counsel, for respondent.

FISH, J.—No question is raised as to the regularity of the writ of certiorari or in relation to the return of the writ; it being deemed by counsel on both sides, desirable to have an early decision of this court upon the merits on the question

whether the relator is properly charged with any criminal offense against the laws.

The complaint upon which the warrant for the arrest of the relator was issued, was made by Charles Allen, a citizen of Saratoga Springs, and on his affidavit alone:

We will assume that the complaint was, on its face sufficient to justify the issuing of the warrant.

The warrant recites that, "information upon oath having been laid before me (Justice BARBOUR), that at the town of Saratoga Springs, on or about the 18th day of June, 1887, the crime of unlawfully keeping and occupying a room with books apparatus and paraphernalia for the purpose of recording bets or wagers upon the result of a certain trial of speed, has been committed, and accusing, " Leo Ottolengui with the commission thereof."

The relator was arrested upon the warrant and brought before the justice, and was arraigned upon the charge which was stated to be a violation of section 351 of Penal Code. He was required to plead to the charge, and did plead not guilty.

Upon his request the proceeding was adjourned to June 23, when he again appeared in person and by counsel; evidence was submitted by the people and at the close of the examination after counsel for the relator announced that no witnesses would be offered by them, the said Police Justice, after reciting that it appeared from the depositions, warrant, exhibits and waiver that the crime therein mentioned had been committed and that there was sufficient cause to believe the relator guilty thereof, did order that he be held to answer the same, and that he be admitted to bail in the sum of one thousand dollars. The relator was then and there let to bail and is now under bonds to appear.

The question is not free from difficulty as to how far and to what extent the Special Term on the return of the writ may look into the evidence in the case so as to reach the merits, and so pass upon the sufficiency of the charge. The distinction is not clearly expressed between the office of the writ of *habeas corpus* and that of *certiorari*, named in section

2015 of the Code. Either or both writs may issue upon the same premises and for the same cause; and except as it may be spelled out from the careful reading of all the sections of the article 3, it might well be held that it gave the petitioner the choice of process; *habeas corpus* in a case where the person of the prisoner could not otherwise be reached, or a *certiorari* where the personal attendance of the prisoner was not deemed necessary.

Section 2032, upon a literal reading, would leave nothing for the Special Term to do, but to inquire into the cause for which the prisoner is detained, and if it is found that he is detained by virtue of the final order of a competent tribunal, the court or judge must forthwith remand the prisoner: and by section 2034, the court or judge is prohibited from inquiring into the legality or justice of the order specified in section 2032.

These sections standing alone and held to prevail upon return of either writ or *habeas corpus* or *certiorari*, would make it the duty of the court to overrule the application for a discharge without an inquiry into the merits or any examination of the evidence if the formal complaint and commitment was free from substantial irregularity. Such a view can scarcely be the correct one. The legislature meant to open a wider field of inquiry upon the return of a *certiorari*.

Section 3042 would seem to make it quite clear that upon a return to a *certiorari*, the evidence had in the case before the committing magistrate should in some way be brought before the court: either by the return of the magistrate, or by some direction of the court; because the last named section makes it the duty of the court or judge upon the return of the *certiorari* to hear the proofs of the parties in support of and against the return. This is followed by section 2043, giving directions to the court following the inquiry, either to discharge the prisoner or dismiss the proceedings according as it shall be found on the hearing. It may then be assumed that this court is authorized and it becomes a duty to inquire into the whole case, to hear and to examine

all the evidence and dispose of it upon the merits as it shall be found upon the proofs offered.

Section 351 of the Penal Code provides that a person who keeps any room. . . or who occupies any place within the state, with books, apparatus or paraphernalia for the purpose of recording or registering bets or wagers, or of selling pools, and any person who records or registers bets or wagers or sells pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast. . . . . . or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wages, or the selling of such pools or becomes the custodian or depositing for hire or reward, of any money staked wagered or pledged upon any such result. . . is punishable, etc.

The section as above quoted is still in force except so far as it has been modified or suspended by chapter 479 of the laws of 1887, provided always there is any such modification or suspension which effects the case before us.

The Act of 1887 referred to, limited the number of days to thirty, during which races may be conducted upon any race track in each year; and added that the provisions of sections 351 and 352 of the Penal Code shall not apply to the grounds of the associations referred to in the other sections of the Act, during the number of days in each year in which races are so authorized; that all racing and pool selling shall be confined to the period between May 15th and October 15th in each year: and all pool selling shall be confined to the tracks where the races take place, and on the days when the races take place. As there is no pretense that the relator was at the time complained of engaged in pool selling or handling bets or wagers *upon the grounds where the races were* going off, it is not apparent how the act of 1887 makes any change in section 351 available to the charge against the relator.

The charge against the relator is that he unlawfully kept a room at Saratoga Springs with books etc., for the purpose of recording bets or wagers etc.

The law interdicting that kind of business is sufficiently plain. It does not matter where the race course is, the law prohibits the keeping of a room for the purpose stated.

The relator says he did not do do any such thing. The business he was doing was lawful and nothing more or less than a private business with and for people who desired to get a hand in the betting that was expected to go on in the far away country by the sea. If this plan and arrangement was intended as a device to evade the law and does come within the spirit of the provisions and substantially within the letter of the law, the court will not lend countenance to the business. Whoever engages in a transaction which comes within the scope and intent of the law, must accept the consequences named in the law.

There is evidence tending to show that on the 18th of June last, defendant kept or occupied a room at Saratoga Springs, about 185 miles distant from Sheepshead race track, where he did a kind of business which he called "Excelsior Commission Agency," that he kept printed blanks in two parts one to be signed by the customer and left with him, and the other to be signed by himself and given to the customer. At the room aforesaid he received money to be transmitted to the manager of the Sheepshead race track to be invested upon a wager on a horse advertised to run that day. The money was received about twelve o'clock of the same day that the horse Linden was to run at 12 M. and 6 P. M. The usual time of travel from Saratoga Springs to N. Y. City is six hours. How long a time is required from the city to the race track, does not appear.

If the money had been forwarded at once by an express train which was to leave immediately in that direction, it was possible that it might reach the Sheepshead race track in time to invest on the 6 P. M. race.

First.—In the case stated, Allen paid to the defendant who was in charge, five dollars in cash, stating that he wanted to put that sum on the horse Linden, to run that day at Sheepshead Bay.

Then defendant produced his printed blanks and required Allen to fill out the blanks with name of horse, sum invested, the particular race etc, the whole paper reading as follows:

"Saratoga Springs, N. Y. June 18, 1887.

"Mr. Octy Cohen, Race Track, Sheepshead Bay.

"Dear sir,—I have this day forwarded to you through the Excelsior Commission Agency, Saratoga, five dollars which amount I request you to invest for me on the Sheepshead Bay race track to-day on the Linden to win in fourth race, on receipt of this notice. If not invested, money to be returned to me.

" Yours truly,

" Charles Allen."

At the same time defendant filled out and delivered to Allen, a receipt in words as follows: "Received of Charles Allen, five dollars to be transmitted to Mr Octy Cohen at the Sheepshead Bay race track." Dated June 15th, 1887. Signed "Ex, Com. Ag."

This receipt was headed,

" Office of Excelsior Commission Agency,
"Brokers and money forwarders,
" Room 1, Putnam Block, Broadway, Saratoga Springs, N. Y.

These papers constituted all there was which might be regarded as covered by the terms, " books, apparatus, or paraphernalia."

The defendant at the time volunteered to Allen an explanation *in language* to the effect that he took the money as a commission agent, would forward it to the race track to Mr. Cohen; and if he heard from Cohen before the race was run he, defendant, would be responsible for what the money paid at the race.

It is quite clear to my mind that the enterprise of the defendant is within a line of industry which the legislature intended to restrain, It was no doubt arranged in reference to the provisions of the statute and so as to evade the letter and possibly the substantial terms. The office of the defendant may be considered a kind of branch department of the

Sheepshead Bay race track. The real transaction, if stripped of the disguise thrown over it, comes squarely within the prohibition.

He kept a room and kept such books or apparatus as were appropriate to the business, recorded the transactions in two documents, the money was paid and received to be invested as a bet or wager, and he sent the money on to headquarters for that purpose. The same end was effected, though calling the device by a different name.

He became a broker of bets and wagers in connection with the manager of the race track.

If such a proceeding does not come within the prohibition, then the statute will fail of its purpose.

The *acts* of defendant constitute just what is denounced by the statute. He declares *in language* that "his business is something innocent;" but his *acts* are on the forbidden ground.

A person who gets possession of personal property by means on their face entirely innocent, protesting that he only hires it or borrows it, and then runs away, may nevertheless be guilty of larceny, even though he covers the transaction by a written order to hire. It only becomes a question of fact what was the intent and what the end to be accomplished.

It may here be a question of fact for a jury whether the cover of defendant's business was not a device to elude the statute, at the same time intending to effect the very thing prohibited.

So holding, these proceedings must be dismissed as directed by section 2043 of the Code of Civil Procedure, and the relator must await the action of the grand jury.

As the statute is a new one, not so clearly expressed as to insure uniformity of opinion, if the relator has given up the business and upon this construction of the law, in good faith, refrains from any further violation of the law, the district attorney would probably be justified in demanding a mild penalty for the offense already committed. This, however, will belong to the sound judgment of the court when the case is presented at trial.